Number 17-2508, United States v. Lomax, Mr. Sorensen, Mr. Clancy. Thank you, Your Honors. May it please the Court, my name is Quinn Sorensen. I represent the defendant, Reginald Lomax, and I would request three minutes in rebuttal if I may. That's fine. Thank you. The rulings under review in this appeal, the decision denying the motion to suppress and the decision finding the defendant to be an armed career criminal implicate different legal questions, but flow from a common legal error, in my view. And that is a misapprehension of the nature of the legal standard governing the issue and of the burden of proof upon the government for each question. We turn first, and my sure honor to prefer otherwise, to the motion to suppress and the constitutionality of the search incident to arrest. The Supreme Court's decision in Arizona v. Gant is crystal clear in this regard, that in order to justify a search incident to arrest, the arresting officer must testify and must provide evidence on the record that there was a fear, a legitimate fear, that the defendant could access the area. There is a factual dispute here, is there not, about the coat, the location of the coat? There is factual dispute about the location of the coat. And as I read the record, the district court made an adverse factual finding from your perspective on that, could it not? Correct, your honor. So how can we re-litigate that? Certainly. There's two ways to look at it. One is the factual question, and that's what your honor's question is getting to. There is a factual dispute. Mr. Lomax testified that the jacket was in an entirely different room, in fact, at the time of the search. The arresting officers testified that they searched it right at the time of the arrest in the same room. Yeah, we were familiar with the facts. But that's the factual dispute. I think, though, if you accept the testimony of the officers on its own, that is still insufficient to satisfy the standard set forth in Arizona v. Gannon. All right, let's focus on what that, let's call them the baked-in facts. Sure. Because I can't think of a better way to describe it. The baked-in facts, as I understand it, are that at the time your client was being arrested, the coat was within reach. Is that, would you agree that that's a baked-in fact? Well, that is part of the district court's finding, yes, your honor. All right. Well, then, I mean, I'm familiar with Shakir. I wrote it. So, you know, Shakir, we didn't have a situation where the gentleman being arrested there, Mr. Shakir, was known to have a firearm. Here, another baked-in fact is that your client was reported to be armed, correct? Correct, your honor. So we've got police coming to the scene of a domestic incident, advised that there is a gun involved and a jacket within arm's reach. So they, how could they not, under Shakir, have cause to believe that perhaps that jacket may contain a gun that would pose a very serious threat to them? I think there are two questions, there are two factual points there that need to be teased out. There is certainly reason, I think, under the circumstances, I'd be willing to admit that there is a reasonable belief that there may have been a gun involved and perhaps the gun was located in the jacket. So you can take that, if you would like, as a baked-in fact, at least for purposes of the hypothetical or the inquiry we're engaged in now. But the question, the real question, under Gant and Shakir, your honor, is whether the defendant had access to that area, in this case, the item to be searched, the jacket. And while that may have been, while we have these findings, and there was testimony that it was within the proximity, maybe it was even within reach. So accepting that. The question isn't whether it was in arm's reach as a hypothetical matter. The question is whether the defendant, as he was restrained at the time, had access. And that includes that he was handcuffed behind his back, he was within control of the arresting officer, and he was turned around from the jacket at the time of the arrest. Doesn't Shakir tell us that this isn't, Gant doesn't set forth a two-part test where you look at, are you restrained, and is it within reach? But it's a holistic thing. And if in the heat of securing somebody, the officer still has some concern that, yeah, there's something that you could get to, we're going to, it is not a high standard that they have to meet. The officer in the heat of that moment could handcuff first and then look at the jacket, or could look at the jacket first and handcuff. Right? I'm not sure if Shakir goes quite that far, but I understand your honor's point, which is, yes, that's exactly what Shakir said, which is this, as you just said, a holistic inquiry, it is not the fact that somebody is restrained necessarily precludes a finding that the defendant has access to an area. So if we accept the district court's finding of fact that the jacket is immediately within the reach of the defendant, and that they're in a confined space, that is a small room, just the two of them, and that the officer has just put the cuffs on, that there is, it's perfectly appropriate, knowing that there's still a gun, or believing there's still a gun someplace, and that could be of concern, what is, what's unlawful under Shakir and Gantt about the officer reaching down immediately and feeling the gun and saying, gun? Because under Shakir, under Gantt, under Myers, under all the precedent that now governs this court in this issue, there doesn't need to be merely a finding that there may be a dangerous implement within reach or in the proximity of the defendant generally. Rather, you must find under the circumstances, including restraints, including other officers present, that the defendant not only was within the proximity of a dangerous implement, but could actually access it. And that was what Shakir focused so heavily on, the circumstances. But Shakir was cuffed, right? Exactly. And the bag was at his feet. I mean, I remember your argument. It was a very close case. It was a tough case. And, you know, the person advocating for Mr. Shakir said, well, you know, it was a one in a hundred that he could have dropped to the ground and got into the bag and got the gun. Exactly. And I guess the upshot of Shakir is, well, you know, guns are dangerous. And if there's a one in a hundred that a guy who's cuffed could, you know, swing his arms and crack someone in the head and go into a pocket or a bag and get a gun, that's a real threat. It's a threat to everybody in the environment. Isn't that the point of Shakir? I think that's exactly what the point of Shakir is. How is it distinguishable? Yeah, how does it help you here? Because, I mean, yeah, look, if your guy's cuffed as he was here, he's in a weakened position, obviously. I mean, he's in a position of weakness vis-a-vis the police. But it's still possible that he's going to cause a disruption that might enable him to get to that gun. And he is the one who knows exactly where that gun is. And the police are, this is one thing he does have an advantage over them. He's got more knowledge about the location of the gun because the police just are advised that, hey, there's a gun somewhere. I take your point. And I think Shakir is distinguishable for the very reason you just suggested, which is such a unique set of circumstances. That is, the bag was right at his feet. After he had been handcuffed, it was a public area. There was a lack of control by arresting officers. There may have been other confederates in the area. So there was a whole lot going on in that circumstance. That's a good point. I think that helps you here because Shakir was with potential confederates. And here you've got none of that. You've got Mr. Womack's alone. And an officer immediately behind him immediately entered the room. So there was not that concern over either that. Because the jacket in this case was not testified to be at his feet. Or he could simply drop that. It might have actually been more accessible. It might have been closer. I don't think there was any testimony. I thought it was going to be a couch or a chair. The district court found that Lomax laid the jacket, quote, beside him, close quote. Page 47. The jacket was in arm's reach, in quotes. 64. The officers, Lomax and the jacket, were in close proximity. And they also had a reason, as Judge Jordan noted, that they had information that he was carrying a gun and had it on his person. I think you had all sorts of testimony, from the officers at least. And again, if we're taking that to be credited, that there was a close proximity between the two officers and the jacket, including when the arrest was made and after the search occurred. But I think the distinction here is that you don't have any testimony whatsoever, no finding whatsoever, that the defendant in this case actually had access, even a reasonable possibility of access. All you have is testimony. Why isn't what Judge Amber just read to you exactly that kind of finding? It was within his reach. It was laid next to him. Why aren't all those things, Mr. Sorensen, exactly the sorts of findings of fact that make this an a fortiori case to Shakir? Because it's not at his feet. It's more accessible to him than the handcuffed person in Shakir was. I'm not sure if it would be. But taking that aside for the moment, I think there's two answers to your question, Your Honor. One is United States v. Myers, which presents a very similar case scenario to this, in which there was the bag in that case which was searched was simply a few feet from all the testimony away from the defendant. He had almost, and he was handcuffed at the time, had at least as much access to that bag as we have reason to believe the jacket was here. But in any case, the point of Myers is that mere proximity is not sufficient. And second of all, in both Myers and Shakir especially, you had testimony from the officers that they had a reasonable concern that the defendant might access that bag and cause a danger to them or to others. In this case, you did not have any of that testimony from the officers. There's nothing in the record that says they had a reasonable concern. So the police officer has to say, the prosecutor has to know to ask, and the police officer has to know to say, I picked that jacket up and looked for the gun because I was worried about the gun. It's one of those things where it's plainly obvious that you're looking for the gun because you've been told there's a gun and you've got to be concerned about a gun. Gant was quite clear, Shakir was quite clear that this exception, an exception to the regular requirement that a warrant is required, is narrowly tailored for the purpose of protecting officer safety and destruction of evidence, and that's the only justification that allows for it. So I do think, in fact, that that does need to be addressed. We're down to like a minute, so I want you to pivot, if you would, to your second issue, and I want to ask you specifically about the 2006 conviction. You seem to lay a lot of stress on the recidivist statute, but the recidivist statute is not the substantive offense. The substantive offense is the marijuana distribution offense, right? Yes, Your Honor. Okay, so what difference does it make if the recidivist statute is broader or narrower or something else? We're looking at whether the distribution count is broader or narrower, and for that we look at the substantive count, don't we? Yes, Your Honor. Okay, if that's true, then what difference does it make that the recidivist count might cover a lot of stuff? There's two points, and one actually flows into the 2008 conviction, but I'll focus on the 2006 for right now, and I think one of the problems here is that you don't have any documentation of the prior, you don't have any documentation from the 2006 conviction actually stating that the recidivist provision was applied in this case. And if you look at a case like United States versus- What in our law, what about the categorical approach tells us that if there's a sentencing enhancement statute that we have to start pulling that in and doing a categorical approach on that? That is United States versus Rodriguez, Your Honor. When I read Rodriguez, I thought it said something quite different. In fact, didn't the state of Washington have a similar statutory scheme and the Supreme Court rejected the proposition that the ACCA's reference to maximum term of imprisonment referred only to first offense? There are two points there, and I'd like to tease them out. One, you're exactly correct. The recidivism statute in the Washington scheme, the recidivism statute here in Pennsylvania, are not part of the substantive offense, at least under the controlling law. But if you look later in Rodriguez, what the court later said at page 389 of the court's opinion, said that, okay, well, once we've determined this, we still need to determine that the recidivism statute was actually applied by the state court. And we need to do that by- But we know it happened here. I mean, there's no dispute that the recidivism statute was applied here, is there? Yes, I believe that is exactly the dispute. Our position is that you can only tell from the judicial records that there was a five-year maximum term of imprisonment because the allegation here is possession of marijuana with intent to distribute. That's five years under subsection 830 of the Pennsylvania statute. The only way you get to the higher 10-year maximum is, again, if you apply the recidivism statute based on the 2002 conviction, but nothing in the records says from the state court that that's actually what occurred here. So you can't make that finding, and that's what Rob Frequest says at the end. Okay. Thank you. Shall I- May I address the 2008 conviction, or shall I- Okay, we'll get you back on the rebuttal. We'll give you a chance to do that. That's fine. Thank you, Your Honor. Mr. Clancy? May it please the Court, I am James T. Clancy. I represent the United States. Just to get it out of the way, since we ended up on the 2006 conviction, why is Mr. Sorensen not right on that? Because the recidivism statute either applies or it doesn't. The Armed Career Criminal Act categorizes a serious drug offense as one that is punishable by a term of imprisonment of 10 years or more, and the recidivism statute made the marijuana conviction fit that definition. But the 2006 conviction was based on the statute 780-115, and that covers counterfeit controlled substances. It does, Your Honor. It does fall within the purview of ACCA? The substantive provision was 780-113. The recidivism statute is 115. But because that marijuana conviction was a subsequent conviction, it was subject to the recidivism statute. That possibility of a 10-year prison term makes it fit within the serious drug offense definition of ACCA. What about the reading your colleague just gave to Rodriguez? Is it in fact the case that the Supreme Court said in Rodriguez, do you have to show for the documents that the recidivism statute was actually applied?  The government believes that Rodriguez did not change the reading of the Armed Career Criminal Act to the extent that it provides that if something falls within the definition of a serious drug offense, then it is an appropriate predicate for the Armed Career Criminal Act. What about the facts of Rodriguez? In fact, did the Supreme Court inquire and make a determination that the recidivism statute for the state of Washington was applied in that case? I believe it did go into the facts. Why would we approach it differently here and just take the government's position that, well, it could have applied and because it could have applied, we're dealing with a more serious offense? I don't think the Supreme Court held that an inquiry has to be made in every case to determine whether a recidivism statute was applied. I don't believe that is the whole point. If it wasn't applied, let me ask it this way. Who's got the burden of proof to show that the ACCA enhancement applies? The government. Okay. And in order to show that it applies, you have to prove that it's a serious drug offense? Of course, yes. That the conviction was for a serious drug offense. Since the record here shows that that 2006 conviction was for marijuana distribution and it's conceded that that is not a serious drug offense without the recidivism statute having been in play, the fact that there's not record evidence to show that the recidivist statute was in play and that he was in fact subject to that 10 plus years, is that a failure proof? I don't believe so, Your Honor. Why not? First, let me first say that this is the first time that particular issue was raised. Up until this point, the only issue raised by Mr. Lomax with respect to that marijuana conviction was whether the recidivism statute in Pennsylvania should be subject to a Mathis analysis. So when you say this is the first time, you're talking about today, standing here at this podium. Yes, Your Honor. But beyond that, the Armed Career Criminal Act sets forth the definition of that serious drug offense. And it is phrased with the term, as prescribed by law. So we first look to the substantive offense that was a 113A30 distribution of marijuana offense. That was a subsequent offense. It was not his first offense. Therefore, the recidivism statute applies. And that makes it a proper predicate for the Armed Career Criminal Act. I think it is as simple as that. I don't mean to demean it whatsoever. When you say it's as simple as that, that's a little like saying, well, we could have charged him with something else. And because we could have charged him with something else, you could assume that we would have charged him with something else. I mean, the logic you're expressing is, other things could have been charged, so go ahead and hit him with the more serious thing. For example, if there were a prior federal charge instead of a state one, and it had been charged under 841A1, but instead of charging the full amount they could have charged, the prosecuting authorities decided to say it was one ounce instead of one kilogram, would you be able to walk in here and say, well, they could have charged him with one kilogram, and that would have been enough to send him away for 10 years. But because whatever the controlled offense was, they only charged him with one ounce, forget that. They could have done more. Doesn't that logic take us in a bad direction? I think that logic does, Your Honor, but that is not the logic I'm applying. Well, it sounds like because you're saying the recidivist statute could have applied, and don't worry about whether it was actually, as a matter of historical fact, something that did apply. And I apologize if I was unclear on that, Your Honor. In your hypothetical, we're talking about charges, substantive charges that could have been filed that would have raised the statutory maximum. That is not what happened here. Here, he was charged with an A30 distribution of marijuana. That offense was a 10-year offense because of the application of the recidivism statute. Stop. That's the question. The availability of it. Now, maybe this is unfair because of what you said a minute ago, like, hey, this is the first time we're hearing this argument, but stick with it for a minute. And I don't know Pennsylvania law, so I'm certainly a detriment here. All right. Is it the case that in order to actually get a 10-year sentence, the prosecutors in Pennsylvania have to take the affirmative step of saying, we're not just charging this marijuana offense. We're also asking for an enhanced penalty because he's a recidivist. I don't believe so, Your Honor. It is not like the federal system where you have to file the notice. It is not. And under state law, my understanding is that even though the double penalty is available, the judge does not have to impose it. So by operation of law, whether the prosecution says anything or says nothing, the recidivist statute is in play. And with nobody saying anything, the judge can say, I see this as a second offense. I'm going to give you the 10 years. I believe that is correct, Your Honor. And with all of that as a backdrop, what actually happens in state court I don't think matters because the Armed Career Criminal Act asks whether that predicate offense fits the definition of serious drug offense. And that marijuana conviction did fit the definition. It does have to matter what's going on in state court, right? Because if you had to do something, as you do in the federal system, to get the enhanced penalty and there wasn't some record that the government actually did that or the state actually did that, then wouldn't that be a Rodriguez problem? If that were the case, it might be, Your Honor. But I don't think that is the case. But it's not. Okay. If we could go back to the main claim. With suppression?  Where was the jacket in relation to Lomax when he was arrested? Well, the testimony was that, and let me back it up just a couple of steps if I may, when we talk about the totality of those circumstances. This event started with the first assault claim. So Officer Naur arrives with someone having been assaulted, follows that victim to the hospital, gets a statement, and as he's returning to the police department, as you know from the facts, he gets the second call. So in his mind, he knows what has occurred prior, and that call says Lomax is in that apartment with a gun, refusing to leave. And that's what that officer walked into. Then when he walked into the apartment, he found Lomax with a jacket on, hands in his pockets. And that is a legitimate cause for alarm. Then, when he told Lomax to take the hands out of the pockets and turn around, Lomax took his hands out of the pockets, but before turning around, he drops the jacket. I think that's another fair cause for alarm. And it was Lomax who knew exactly where that gun was in the jacket, and even though he was cuffed, it was within his arms' reach. As Officer Naur testified, he simply bent down and picked it up. It was within both of their reach. So I think with all the circumstances there, Your Honor, it was a legitimate safety concern for that officer to reach down and feel that jacket and find that gun, because all of the information was, there is a gun there, and that guy has it. Now, hypothetically, let's say the jacket was 10 feet away. What could the officer have done then? Having received the information... Well, let me back up. Do we still assume in this hypothetical that Lomax had the jacket on when the officer arrived? Let's say he didn't, and then we'll come back to the... Let's say he didn't. It was 10 feet away, but the officer does know. I mean, he then cuffs him, and he knows that somebody had reported there was a gun. Can he check that jacket? I think having cuffed Lomax and not finding a gun on his person with the information that there was a gun, I think he does have the ability to search that jacket, if that were the case. Even though there was no way that Lomax could get to that gun? Well, 10 feet is not a lot, Your Honor. Okay, it's the other side of the room. Outside the room, I think. Other side of the room. It's still in the room, and the guy's cuffed. What I'm trying to do is figure out the consequences for the next case. I understand. I think the farther the jacket gets away, the farther it becomes from being a potential security concern. The fewer people there, the more police there, everything must be taken into consideration because we're dealing with a totality in all the circumstances. I think every additional fact we add to that, Your Honor, is going to change the perspective. So I can't give you a firm answer, but I can say with fervent belief that this jacket, where it was with this defendant, even though he was cuffed, presents a legitimate safety concern. How about cuffed behind his back, right? I don't think you can tell, and I've got the author here, so a more careful read might reveal this, but is it clear as secure whether he's cuffed behind his back or in front? It just says he's cuffed, right? I believe it does, but frankly, Your Honor... Does it matter that he's cuffed behind his back and it would take a little bit of contortion to turn around and get in the jacket pocket and manage to aim a gun? It might do that. I also think it is entirely possible that knowing exactly where that gun was and where he put the jacket down when he took it off, having had both of his hands in those pockets before he took the jacket off, changes this scenario considerably. And what about the drugs in the other pocket? Well, Your Honor, I think when the officer went to check that jacket, he can't be sure that there's only one weapon. I think it was reasonable for him to check the entire jacket to feel for the drugs. I don't think the drugs are in play anymore in this case. Mr. Lomax pled to the felon in possession charge. The drug offenses were dismissed as part of the plea agreement. Those drugs were not even counted against him in the calculation of the sentencing guidelines because Judge Caldwell found they were possession amount. So I don't think they're in play. Any further questions? Thank you very much. Mr. Sorensen, you want to start with the point that Mr. Clancy mentioned that this is the first time we've heard the argument that there's a historical fact problem here. Well, I think that was the point of the briefing actually before this  I just looked back through the briefing and your argument in the opening brief had to do with synthetic substances and the breadth of synthetic substances against the marijuana charge. I looked at your reply brief in which one sentence is dedicated to the 2006 conviction. So you want to point us to language anywhere in the briefing where the defendant, Mr. Lomax, makes the argument that the 2006 conviction cannot be considered a serious drug conviction because there's no record in this case that the recidivist statute was actually applied or considered or was applicable under the circumstances. Which is what I take your argument to be. The focus of the briefing, I think, was that the recidivist statute could be applied based on a counterfeit substance. We don't know what it was applied for, in this case, based on the 2002 conviction. That's basically a failure of proof of the type I was just describing. I was just trying to get to the heart of the matter a little bit more clearly in terms of the lack of documentary evidence. And I think that leads into the argument I was going to present on the 2008 conviction because I don't want to take up further too much time. But that suffers from a similar flaw in that you have in that case an information presented by the government which I believe is at one... Isn't there just a finding of fact there? That is not a finding of fact, Your Honor. Didn't the district court judge make a decision about what was pled to? Yes, Your Honor. And that's a historical fact, right? It's a different sort of historical fact because under Rodriguez, Shepard, it needs to be based on the judicial records that are presented. And there was a record from... You've pointed to something that you believe is an ambiguity in the record that there's a 7-year term and that couldn't be consistent with cocaine but there's certainly evidence in the record that cocaine is what he pled to. Distribution of cocaine, right? Yes, he pled to some offense that was labeled as such in the plea. So the district court made a finding looking at that record and said you pled to distribution of cocaine, that's a serious offense. Is that a finding? I don't believe so in the sense that it doesn't have a binding on this court because it's the same reasoning in United States v. Johnson. That was a case in which this court assessed whether a violent felony had been pled and the defendant was convicted of it. And the question was whether it was reckless or intentional. Intentional being the one that would qualify it as a violent felony. Notwithstanding the finding of the district court, this court came up and said we've got an information here that's ambiguous as to what was pled. So we can't really determine it without the judgment of conviction therefore we're going to overturn it and send it back to the district court notwithstanding the finding down there that it was a violent felony. I think the same problem applies here. You've only got the information. You don't have a judgment of conviction and without that you can't make the finding and if the district court purported to do so it was clearly erroneous. If your honors would allow me I can make one point on the search and seizure issue. I believe what you heard from Mr. Clancy was a recognition that his standard is not a standard. The only standard that applies in the answer to your honors questions about when does the court get too far it's when there is no finding and there can be no testimony regarding access and a legitimate reasonable concern over officer safety and that needs to appear in the record and that's what cases such as Gant, Shakir, Myers especially make clear that if there is not that testimony then it is not sufficient just to point out that there is a possible danger and Myers is very on point on this in the sense that in that case as well it was a domestic dispute with a gun in a bag that was thrown away during the circumstance of the arrest and yet this court found that that was not sufficient. The rule that Mr. Clancy seems to be going on... Primarily because they went downstairs first. That's one reason your honor but I think it's still... So that belied the notion that they had a concern about it. But the court also said that it might be they really focused on the fact of where the distance was and how much access the defendant actually had which is really the standard here and I think... If you were the police officer here and you had a 911 that somebody has a gun and you come into this situation which could get very violent the person takes his coat jacket off and drops it at his feet, you're telling me you wouldn't check that gun even after you have a person cuffed? I'm telling you that if I was worried about it I certainly would but if I was worried about it also when I came into court to testify as to the legitimacy of that search, knowing what the constitutional standard is I would testify and I would be asked about that specific issue. Were you concerned about his access? It's interesting. It's a very interesting argument but it sounds like you're advocating for a subjective standard here rather than, isn't this clearly an objective standard? Exactly, it's both your honor. There needs to be a legitimate, objective belief that is one that's verifiable, testable in the discourse present that there was actually access in the circumstances but unless you have... Are you suggesting that the officer must have a subjective fear? No, what I'm saying now is that the record must provide circumstances under which you can assume that an officer in that situation had a reasonable belief if you don't have the officer himself testifying and he had that reasonable belief then there's really no reason to go even to the second step. You can't just take it as a given that if you just arrested somebody you've told is armed and dangerous that you've got a concern about a weapon and danger? Well, the question then is again, that is always going to be the circumstance but then the question becomes, what is the access? And then this isn't something that maybe I don't want to open up a whole other can of worms but even if one assumed that he thought I have now disabled and restrained Mr. Lomax sufficiently is a police officer supposed to say so I'm not worried that there's probably a gun right here in fact, I'm not worried that there's probably a gun in this coat let's just walk out of here or is there a concern that there's still a safety issue and I have a responsibility as a peace officer knowing that there... or having good cause to believe that there is a gun and indeed a gun probably in that coat because it's not on Mr. Lomax now that he's constitutionally forbidden without going to the court to pick it up and take the gun out. Well, there's a couple of responses. One, as a search incident of arrest, yes, he is precluded from doing that because that is limited in terms of access and concern over the defendant's access to the area at issue and in fact, this was a specific argument that was raised in Myers and rejected that is, the officer argued that, ok, well even if it wasn't a valid search to an incident of arrest because the defendant was away from the area what about the danger posed by that bag there's still people in here, I'm worried about it, shouldn't I be able to search it and that's exactly what the... and the court said no, that is not sufficient and that's again, that's actually, if you look at the testimony on page 48 of the appendix, that's what the officer here testified to he didn't say anything about fear over the defendant's access to the jacket he said, I was worried about a jacket remaining in the home at that point in time and the answer to that is not to conduct a search incident of arrest but to either secure the premises and secure a warrant which could have been obtained at that time and that was the appropriate course of action here especially after the defendant had been retained the only way you get to satisfying the requirement of a search incident of arrest in this circumstance in my mind is to revert back to the New York v. Belton rule which was rejected in Shakir and I'll note that on pages 15 and 16 of the government's brief they cite a string of cases from other circuits, including this one in which they say that those cases support a finding of access in that case all of those cases are pre-Gant and those are the precise cases that were cited in Shakir and rejected as Belton rule, improper decision in Judge Hardiman's opinion for that reason I would suggest that the motion to suppress was improperly decided the ACCA issues were improperly decided and the judgment of conviction and sentence should be vacated thank you both counsel, very well presented arguments we'll take them out of your advisement I would ask if counsel could get together with the clerk's office and have a transcript, a parables oral argument and would it be okay if the government picks up the cost for that?